# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | ) | |
| | ) | |
| Appellant, | ) | Case Nos.: 2:14-cv-02226-GMN |
| vs. | ) | 2:14-cv-02227-GMN |
| | ) | |
| TJ PLAZA, LLC; DSWC, Inc., | ) | **ORDER** |
| | ) | |
| Appellees. | ) | |
| | ) | |

In this bankruptcy appeal, Appellant U.S. Bank National Association ("Lender") seeks review under 28 U.S.C. § 158(a) and § 158(c)(1) of two related orders entered by the United States Bankruptcy Court for the District of Nevada ("the Bankruptcy Court"), sustaining an Objection and granting a Motion to Strike filed by Appellees TJ Plaza, LLC ("TJ Plaza") and DSWC, Inc. ("DSWC") (collectively, "Debtors"), thereby striking certain votes cast by Lender against confirmation of Debtors' Chapter 11 Plan of Reorganization (the "Plan"). Lender asks the Court to find that the Bankruptcy Court erred in striking Lender's votes and in determining that the claim giving rise to the struck votes was comprised of a secured claim in the amount of $3,335.86 and a priority unsecured claim in the amount of $10,727.65 rather than as a general unsecured claim for $14,063.51. For the reasons explained below, the Bankruptcy Court's Orders are **AFFIRMED**.

## I.    BACKGROUND

Debtors are tenants in common and joint owners of a retail shopping center located in Clark County, Nevada commonly known as Trader Joe's Plaza (the "Property"). Lender holds a perfected, first-priority security interest on the Property securing a $5,100,000 loan made to Debtors on July 9, 2003. (Promissory Note, ECF No. 9-2; Deed of Trust, 9-3). On July 11, 2013, the loan's maturity date, Debtors failed to make a required payment on the loan and

subsequently filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on March 21, 2014. (Vol. Pet., ECF No. 9-1).  These bankruptcies are being jointly administered before the Bankruptcy Court.

On April 3, 2014, Debtors filed their initial Schedules and Statements, which listed one secured claim held by Lender under the Deed of Trust for $4,289,897.90 and fourteen general unsecured claims totaling $562,084.04, including two claims held by City of Las Vegas Sewer Services ("LVSS") for utility services in the amounts of $7,627.69 and $6,332.33. (Schedules and Statements, Tab 5 to Memo. in Supp. of Opening Brief, ECF No. 11-6).  However, on October 6, 2014 the Court entered an Order striking two of the unsecured claims. (Order Sustaining Objection to Claims, Appellate Record at 1479–81, ECF No. 9-39).  Debtors subsequently filed the Amended Schedules on October 20, 2014, removing the two struck claims and reclassifying the claims held by LVSS to one unsecured priority claim and one secured claim, both of unspecified amounts. (Amended Schedules, Tab 17, to Memo. in Supp. of Opening Brief, ECF No. 11-19)  Accordingly, along with the reclassified claims held by LVSS, the Amended Schedules only listed ten general unsecured claims for a total amount of approximately $30,000 in addition to the secured claim held by Lender. (Amended Schedules, Tab 17, to Memo. in Supp. of Opening Brief, ECF No. 11-19).

On September 9, 2014, one month prior to the filing of the Amended Schedule, Debtors filed the Plan, proposing seven classes of claims.[1] (The Plan at 12–18, Tab 8 to Memo. in Supp. of Opening Brief, ECF No. 11-10)  Of these seven classes, however, only two classes were entitled to vote on confirmation of the plan—one class comprised solely of Lender's secured

---

[1] The seven classes of claims were: (1) Lender's secured claim; (2) other secured claims; (3) priority non-tax claims (4) general unsecured claims (5) the TJP Credit unsecured claim that was struck by the Bankruptcy Court; (6) the Desert Lakes Apartments unsecured claim that was struck by the Bankruptcy Court; and (7) the member equity interests of the Debtor. (The Plan at 12–18, Tab 8 to Memo. in Supp. of Opening Brief, ECF No. 11-10).

claim and one class containing the general unsecured claims.[2] (*Id.*).  Under the Plan, the unsecured creditors would be paid back in full within 6 months while Lender's claim would be stretched out over an additional 12 years with a reduced interest rate of 4.25%. (*Id.* at 12–15).

Three months prior to the submission of the Plan on June 19, 2014, Debtors had also filed a motion seeking approval of their Disclosure Statement, which, *inter alia*, outlined the procedures for soliciting and submitting votes on confirmation of the Plan. (Mot. for Approval of Disclosure ¶¶ 10–18, Tab 1 to Memo. in Supp. of Answering Brief, ECF No. 13-1).  The motion included a form ballot to be distributed to creditors in the voting classes. (*Id.* ¶¶ 13–15); *see also* (Ex. 2 to Mot. for Approval of Disclosure, Tab 1 to Memo. in Supp. of Answering Brief, ECF No. 13-1).  The motion also proposed setting the voting record date (the "Record Date") to the date of entry of the order approving the Disclosure Statement with a voting deadline thirty days after entry of the order. (Mot. for Approval of Disclosure ¶ 9, Tab 1 to Memo. in Supp. of Answering Brief, ECF No. 13-1).  Accordingly, only the holders of claims in voting classes on the Record Date would be entitled to vote on the Plan. (*Id.*).  On September 10, 2014, the day after Debtors filed the Plan, the Bankruptcy Court entered an order granting the motion, thereby setting the Record Date on September 10, 2014 and the voting deadline on October 10, 2014. (Disclosure Statement Order, Tab 9, to Memo. in Supp. of Opening Brief, ECF No. 11-11).

On September 15, 2014, counsel for LVSS filed its Proof of Claim asserting that its claim was comprised of a secured amount of $3,335.86 and an unsecured priority claim of

---

[2] Pursuant to section 1129 of the Bankruptcy Code, in order to confirm a chapter 11 plan, the plan must be accepted by at least once class of claims that are impaired by the plan. 11 U.S.C. § 1129(a)(10).  "A class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . ." 11 U.S.C. § 1126(c).  Under the Plan, only Lender's and the general unsecured creditor's claims were impaired.

$10,727.65.[3] (LVSS Proof of Claim, Tab 28 to Memo. in Supp. of Opening Brief, ECF No. 11-34).  Accordingly, following its reclassification, LVSS's claim did not entitle LVSS to vote on confirmation of the Plan with the class of general unsecured creditors. *See* (The Plan at 12–18, Tab 8 to Memo. in Supp. of Opening Brief, ECF No. 11-10).

In an effort to prevent confirmation of the Plan and protect its secured interest, Lender voted to reject the Plan using its secured claim and sent letters to several of the listed unsecured creditors on July 29, 2014, offering to purchase their claims for the full amount claimed. (Offer Letters, Tabs 30 and 32 to Memo. in Supp. of Opening Brief, ECF Nos. 11-36, 11-38; Lender Ballot, Tab 31 to Memo. in Supp. of Opening Brief, ECF Nos. 11-37).  At the time Lender sent these letters, LVSS's claim was still classified as general unsecured under the initial Schedules and Statements. *See* (Schedules and Statements, Tab 5 to Memo. in Supp. of Opening Brief, ECF No. 11-6).  In late September, Lender purchased five of the claims solicited for a total amount of $15,989.87 and submitted ballots voting against Plan confirmation for these claims on October 3, 2014. (Notices of Transfer, Tabs 10–14 to Memo. in Supp. of Opening Brief, ECF Nos. 11-12, 11-13, 11-14, 11-15, 11-16; Lenders Ballots, Tab 31 to Memo. in Supp. of Opening Brief, ECF No. 11-37).  Included among these five purchased claims was the claim held by LVSS in the amount of $14,063.51. (City Notice of Transfer, Tab 13 to Memo. in Supp. of Opening Brief, ECF No. 11-15; Lenders Ballots, Tab 31 to Memo. in Supp. of Opening Brief, ECF No. 11-37)  However, all of the transfers of these claims occurred between September 26, 2014 and September 30, 2014, after the Record Date set by the Bankruptcy Court in its Disclosure Statement Order and after LVSS had filed its proof of claim listing its claim as partially secured and partially priority unsecured. (Notices of Transfer, Tabs 10–14 to Memo. in Supp. of Opening Brief, ECF Nos. 11-12, 11-13, 11-14, 11-15, 11-16;

---

[3] Though not specified in the Proof of Claim, LVSS's unsecured priority status for part of its claim is based on the priority granted to certain unsecured claims of governmental units in 11 U.S.C § 507(a)(8).

(Disclosure Statement Order, Tab 9, to Memo. in Supp. of Opening Brief, ECF No. 11-11); (LVSS Proof of Claim, Tab 28 to Memo. in Supp. of Opening Brief, ECF No. 11-34). Furthermore, rather than submitting the ballot forms provided to the unsecured creditors pursuant to the Disclosure Statement Order, Lender submitted ballots for its purchased unsecured claims by modifying the ballot it received as a secured creditor. *See* (Lenders Ballots, Tab 31 to Memo. in Supp. of Opening Brief, ECF No. 11-37).

On October 20, 2014, Debtors filed an Objection to the Proof of Claim and Motion to Strike the Ballot cast on behalf of LVSS. (Objection and Mot. to Strike, Tab 15 to Memo. in Supp. of Opening Brief, ECF No. 11-17). In the motion, Debtors argued that the ballot cast by Lender on behalf of LVSS should be struck because it was not acquired until after the Record Date, the claim was satisfied prior to allegedly being transferred to Lender, the claim was only enforceable by the City and thus could not be transferred to a private party, and the claim was either a secured or a priority unsecured claim and therefore could not be voted as a general unsecured claim. (*Id.* 1:14–2:4). The Bankruptcy Court heard oral argument on the Objection and Motion to Strike on December 15, 2014 and granted the Debtors' objection and motion during the hearing. (Orders on Obj. and Mot. to Strike, Tabs 1 and 2 to Memo. in Supp. of Opening Brief, ECF Nos. 11-2, 11-3); *see also* (Transcript of December 15, 2014 Ruling, Case No. 14-11894, Bky. Ct. Dckt. #484). The Bankruptcy Court struck the ballot cast on behalf of LVSS's claim on the alternative grounds that (1) the ballot cast was not on the appropriate form, (2) the claim was acquired by Lender after the Record Date, and (3) the claim was for secured and priority unsecured amounts that did not entitle the holder to a vote. (Transcript of December 15, 2014 Ruling 12:14–14:14, Case No. 14-11894, Bky. Ct. Dckt. #484). The Bankruptcy Court subsequently entered written orders on December 17, 2014, adopting the ruling at the hearing. (Orders on Obj. and Mot. to Strike, Tabs 1 and 2 to Memo. in Supp. of

Opening Brief, ECF Nos. 11-2, 11-3).  Lender then filed the instant appeal on December 31, 2014. (Not. of Appeal, ECF No. 1).

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 158(a) and (b), federal district courts and bankruptcy appellate panels, where applicable, have jurisdiction to hear appeals from final judgments of bankruptcy judges.  "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.  "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Id.*

"The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*." *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010).  The Court reviews "the determination of whether issue or claim preclusion applies *de novo* as mixed questions of law and fact in which legal questions predominate." *In re Cogliano*, 355 B.R. 792, 800 (B.A.P. 9th Cir. 2006) (internal quotations omitted); *see also Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir. 1988).

## III.   DISCUSSION

Lender presents two issues on appeal.  First, Lender argues that the Bankruptcy Court erred in striking the ballots acquired from LVSS because of its acquisition of the claim after the Record Date and its use of modified ballots.  (Opening Brief 11:12–14:5, ECF No. 10). Second, Lender argues that the Bankruptcy Court erred in determining that the claim acquired from LVSS was partially secured and partially priority unsecured because when such a claim is acquired by a private entity, it becomes a general unsecured claim. (*Id.* 14:6–16:8). Additionally, in their Answering Brief, Debtors argue that this Court lacks jurisdiction to even hear this appeal because Lender's dispute is actually with the Disclosure Statement Order,

which is an interlocutory order that can be appealed only with special permission from the Bankruptcy Court. (Answering Brief 4:22–7:27, ECF No. 12).  Accordingly, the Court will address the jurisdictional challenge raised by Debtors before turning to the arguments presented by Lender.

### A. This Court's Jurisdiction

In their Answering Brief, Debtors assert that though Lender structures its appeal as one seeking reversal of the two orders striking the ballot cast on the claim acquired from LVSS, in actually, Lender is attempting to reverse the Disclosure Statement Order that was interpreted as barring the ballot by the Bankruptcy Court in the appealed orders. (Answering Brief 4:22–7:27, ECF No. 12).  Debtors further assert that a Disclosure State Order is interlocutory and can only be appealed with leave from the Bankruptcy Court, which Lender has not sought.[4] (*Id.*).

Debtors, however, are incorrect.  Both the Motion to Strike and Objection Orders are final, appealable orders that may be reviewed by this Court.[5]  Furthermore, Lender's appeal does not seek reconsideration of the Disclosure Statement Order as Debtors suggest, but rather seeks, *inter alia*, reversal of the Bankruptcy Court's finding that the ballot cast by Lender on behalf of LVSS was invalid because it was cast after the Record Date. (Opening Brief 11:12–13:17, ECF No. 10).  Lender is not challenging the establishment of the Record Date in the Disclosure Statement Order; it is instead challenging that the Record Date has the effect the

---

[4] 28 U.S.C § 158(a) states that district courts have jurisdiction to hear appeals "(1) from final judgments, orders, and decrees [of the bankruptcy court]; (2) from interlocutory orders and decrees issued under section 1121(d) . . . and (3) with leave of the [bankruptcy] court, from other interlocutory orders and decrees."

[5] Debtors do not disputed that the Motion to Strike and Objection Orders themselves are final, appealable orders. *See* (Answering Brief 4:22–7:27, ECF No. 12).  Moreover, numerous courts, including the Ninth Circuit have held that an orders on an objection to a claim or determining claim priority are final orders. *See, e.g.*, *In re Hillsborough Holdings Corp.*, 116 F.3d 1391, 1393–94 (11th Cir. 1997); *In re Mouradick*, 13 F.3d 326, 326 (9th Cir. 1994); *In re Coveney*, 217 B.R. 362, 363 (D. Mass. 1993); *In re Consolidated Pioneer Mortgage*, 178 B.R. 222, 224 (B.A.P. 9th Cir. 1995); *see also In re Saco Local Dev. Corp.*, 711 F.2d 441, 442–48 (1st Cir. 1983) (order determining claim priority is final order for purposes of appeal).

Bankruptcy Court gave it in the orders now on appeal. (*Id.*).  Therefore, Lender's appeal is of the Motion to Strike and Objection Orders, not the Disclosure Statement Order.

Moreover, even if the Motion to Strike and Objection Orders are in some respect partially interlocutory based on their application of the Disclosure Statement Order, those orders are still final under the "pragmatic" approach adopted by the Ninth Circuit for determining whether an order is final in bankruptcy cases. *See Preblich v. Battley*, 181 F.3d 1048, 1055 (9th Cir. 1999) ("Because of the unique nature of bankruptcy, this circuit has taken a 'pragmatic' approach in determining whether a judgment, order or decree is 'final' in bankruptcy cases.") (citing *In re Mason*, 709 F.2d 1313, 1318 (9th Cir. 1983)).  The emphasis under the pragmatic approach is on the need for immediate review, rather than whether the order being appealed is technically interlocutory. *Id.*  In applying this approach, the Ninth Circuit has stated that a bankruptcy court order is final and thus appealable without leave where it "1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed." *In re AFI Holding*, 530 F.3d 832, 836 (9th Cir. 2008).  The appealed orders here determined that Lender's ballot cast on the claim acquired from LVSS was invalid, a discreet issue that seriously affected Lender's right to prevent confirmation of the Plan.  Therefore under the "pragmatic" approach, they are final appealable orders. Accordingly, the Court finds that it possesses jurisdiction to review Lender's appeal. *Cf. In re Windmill Durango Office, LLC*, 481 B.R. 51, 54, 63 (B.A.P. 9th Cir. 2012) (finding that the panel had jurisdiction under 28 U.S.C. § 158 to review a bankruptcy court's order denying a motion to change the ballot on a transferred claim from accepting to rejecting confirmation of the reorganization plan).

### B.  Issues on Appeal

The two issues on appeal are: (1) whether the Bankruptcy Court erred when it struck the ballot cast by Lender on the claim acquired from LVSS for the procedural problems of being

acquired after the Record Date and cast on modified ballots and (2) whether the Bankruptcy Court erred when it struck the ballot cast by Lender on the claim acquired from LVSS because it was not a general unsecured claim entitled to vote on the Plan. (Opening Brief 11:12–14:5, ECF No. 10).

### 1. Record Date and Modified Ballots

Lender's first issue on appeal is whether the Bankruptcy Court erred in striking the ballot cast on the claim acquired from LVSS for being cast on a modified ballot after the Record Date. (Opening Brief 11:12–14:5, ECF No. 10).  Regarding the use of a modified ballot, the Court does not find that this slight technical error alone justifies striking Lender's vote.  Federal Rule of Bankruptcy Procedure 3018, which governs the process by which creditors vote on plan confirmation, only requires the ballot to "be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." *See also Bakes v. Official Comm. of Unsecured Creditors*, 359 B.R. 831, 835 (S.D. Fla. 2006) ("Federal Rule of Bankruptcy Procedure 3018 . . . governs the form of an acceptance or a rejection of a Chapter 11 plan . . . .").  Here, the modified ballot cast by Lender was a copy of the ballot delivered to Lender for the voting of its secured claim with a few of the words changed to indicate that it was being cast on LVSS's unsecured claim. *See* (Lenders Ballots at 4–5, 12–14, Tab 31 to Memo. in Supp. of Opening Brief, ECF No. 11-37).  This written ballot identified Lender's vote to reject the Plan and was signed by Lender's agent. *See* (*id.*).  Furthermore, the secured ballot which was modified to create the unsecured ballot was based upon the appropriate form, Official Form 14. *Compare* (*id.*) *with* Bankruptcy Federal Judiciary Official Forms B14; *see also* (Disclosure Statement Order ¶ C, Tab 9, to Memo. in Supp. of Opening Brief, ECF No. 11-11) (finding that the proposed mailed ballots are "sufficiently consistent with Official Form 14" to be used in voting on the Plan).  Therefore, Lender's modified ballot conformed to the

appropriate Official Form and met all the other requirements of Rule 3018.  Accordingly, Lender's use of the modified ballot in casting its vote on the claim acquired from LVSS did not justify striking the vote.

However, the Court does find that the acquisition of LVSS's claim after the Record Date warrants the striking of Lender's vote on that claim.  On appeal, Lender does not dispute that the Disclosure Statement Order, entered on September 10, 2014, established the Record Date on the date it was entered, nor does Lender dispute that it acquired LVSS's claim after the Record Date set by the Order.  (Opening Brief 11:12–13:18, ECF No. 10).  Instead, Lender's argument is that under Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, the Record Date only limits the voting of claims based on interest in a security. (*Id.*).   Therefore, because the claim transferred from LVSS is not based on a security interest, Lender did not need to acquire the claim prior to the Record Date in order to vote that claim. (*Id.*).

Debtors may be correct insofar as they assert that the record date created automatically upon the entry of an order approving the disclosure statement under Federal Rule of Bankruptcy Procedure 3018(a) only applies when the claim being voted is based on a security. *See In re Union Meeting Partners*, 178 B.R. 664, 670 (Bankr. E.D. Pa. 1995) ("The plain language of F.R.B.P. 3018(a), however, makes it clear that the 'bankruptcy record date' does not limit a transferee's right to vote a *claim*, but rather limits such a party's right to vote a *security interest* only.").  However, Debtors argument ignores the fact that the Record Date at issue here was expressly created under the Bankruptcy Court's Disclosure Statement Order, not simply as a function of Rule 3018(a).  "A bankruptcy court has statutory authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code." *Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014) (quoting 11 U.S.C. § 105(a)).  This authority includes the power to set a record date establishing which claimants—regardless of whether their claims are based on a security—are entitled to vote on confirmation of the

reorganization plan, a power which many bankruptcy courts routinely exercise. *See, e.g.*, *In re Hawaiian Telcom Commc'ns, Inc.*, 430 B.R. 564, 600 (Bankr. D. Haw. 2009); *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 144 (D. Del. 2006); *In re Extended Stay Inc.*, 2010 WL 2824571, at *2, 5, 7 (Bankr. S.D.N.Y. June 22, 2010); *In re Finlay Enterprises, Inc.*, 2010 WL 6580629, at *2–6 (Bankr. S.D.N.Y. May 18, 2010); *In re Holley Performance Products, Inc.*, 2010 WL 5054209, at *3 (Bankr. D. Del. Apr. 15, 2010); *In re U.S. Mortgage Corp.*, 2009 WL 7228987, at *4 (Bankr. D.N.J. Sept. 11, 2009).   The establishment of such record dates allows Debtors to know which claim holders are entitled to receive copies of the plan and the approved disclosure statement, ballots for voting, and notice of the voting deadline. *See* Fed. R. Bankr. P. 3017(d) (stating that those entitled to receive ballots and notice of the voting deadline are "creditors and equity security holders . . . on the date the order approving the disclosure statement is entered or another date fixed by the court . . . ."); *see also In re Accuride Corp.*, 2009 WL 7226901, at *3 (Bankr. D. Del. Dec. 21, 2009) ("December 18, 2009, shall be the voting record date . . . with respect to all [non-security] Claims . . . .   The Debtors shall use the applicable Voting Record Date for determining which (a) creditors are entitled to receive Solicitation Packages, (b) creditors are entitled to vote to accept or reject the Plan, and (c) nonvoting creditors and equity interest holders are entitled to receive notice of the Confirmation Healing.").

The Disclosure Statement Order here states: "The Record Date for the purposes of determining which creditors are entitled to vote on the Plan shall be the date of entry of this Order." (Disclosure Statement Order ¶ 3, Tab 9, to Memo. in Supp. of Opening Brief, ECF No. 11-11).   The Disclosure Statement Order contains no limitation on the kinds of claims limited by the Record Date created under it. (*Id.*).   Therefore, under the Bankruptcy Court's order, a creditor may only vote the claims it held on the Record Date regardless of whether their claim

is based on a security interest.  Accordingly, because Lender did not acquire LVSS's claim until after the Record Date, it was not entitled to vote that claim.

### 2. Class of LVSS's Claim

The Bankruptcy Court found that the claim filed by LVSS was partially secured and partially priority unsecured even after that claim was transferred to Lender. *See* (Transcript of December 15, 2014 Ruling 13:15–15:12, Case No. 14-11894, Bky. Ct. Dckt. #484).  In reaching this decision, the Court relied on the general principle that an entity which acquires a bankruptcy claim steps into the shoes of that claimant, enjoying both the benefits and the limitations of the claim as a successor in interest. (*Id.*) (citing *In re Kellogg Square P'ship*, 160 B.R. 332, 335 (Bankr. D. Minn. 1993); *In re Applegate Prop., Ltd.*, 133 B.R. 827, 833 (Bankr. W.D. Tex. 1991); *Matter of Heights Ban Corp.*, 89 B.R. 795, 799 (Bankr. S.D. Iowa 1988)).  In its brief, Lender does not dispute that at the time the claim was in LVSS's hands, it was partially secured and partially priority unsecured pursuant to § 507(a)(8) and therefore could not have been voted as part of the class of general unsecured claims. (Opening Brief 14:5–16:8, ECF No. 10).  Instead, Lender argues that when the claim was transferred to Lender, it lost its secured and priority status and thereby became a general unsecured claim entitled to vote with that class. (*Id.*).

Lender is correct that under the plain language of the statute, the priority unsecured status granted in § 507(a)(8) only applies while a "governmental unit" holds the claim. *See In re Sarnovsky*, 436 B.R. 461, 465–66 (Bankr. N.D. Ohio 2010) ("When paying the tax debt of a 'governmental unit,' nothing in the Bankruptcy Code expressly allows the Debtors to step into the shoes of the government and assume its priority status under § 507(a)(8) and § 726(a).  The Court cannot assume that this omission was inadvertent."); *In re Thomas*, No. 97-23213 JKF, 2001 WL 55533, at *2 (Bankr. W.D. Pa. Jan. 18, 2001) ("CARC's claims still do not have § 507(a)(8) priority because by the plain language of that section the priority depends on the

holder of the claims being a "governmental unit.'"); *see also In re 431 W. Ponce De Leon, LLC*, 515 B.R. 660, 690 (Bankr. N.D. Ga. 2014) (noting that Congress specifically limited the applicability of section § 507(a)(8) and § 1129(a)(9)(C) and (D) to "governmental units" but did not so limit the application of § 511 because it used the broader term "tax claim," which encompasses claims held by nongovernmental creditors).  Therefore, once Lender acquired the claim, it became a general unsecured claim.

However, having now found that those entitled to vote on conformation of the Plan were the holders of general unsecured claims on the Record Date, the status of LVSS's claim after its transfer to Lender is irrelevant to whether Lender's was entitled to a vote on that claim.  The holder of LVSS's claim on the Record Date was LVSS.  Therefore, for the purposes of voting, the claim was in the hands of a governmental unit, and as such—by Lender's own admission—was a partially secured and partially priority unsecured claim that was not entitled to vote on confirmation of the Plan.  Accordingly, even if the Bankruptcy Court erred in reasoning that LVSS's claim remained entitled to its priority status after being transferred to Lender, there was no error in the ultimate finding that it was appropriate to strike the ballot cast by Lender on LVSS's claim.  As a result, the Bankruptcy Court's Orders are affirmed. *See In re Crystal Properties, Ltd., L.P.*, 268 F.3d 743, 755 (9th Cir. 2001) ("On appeal this court may affirm the decision of the bankruptcy court on any grounds supported by the record, even if the bankruptcy court relied on the wrong grounds or reasoning.").

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that the orders of the United States Bankruptcy Court for the District of Nevada are **AFFIRMED**.

**DATED** this __28__ day of September, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge